MARCEL L. MALGOIRE AND MARGUERITE C. MALGOIRE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent GEORGE J. COCORES AND MARCIA COCORES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Malgoire v. Commissioner
Docket Nos. 4688-75, 5477-75.
United States Tax Court
T.C. Memo 1978-29; 1978 Tax Ct. Memo LEXIS 485; 37 T.C.M. (CCH) 175; T.C.M. (RIA) 780029; January 24, 1978, Filed *485 A liquor store business was sold for $90,000. In the sales agreement, among other things, $20,000 was allocated to a covenant not to compete and $10,000 to goodwill. Held, seller has failed to show by strong proof that the assignment of consideration to the covenant by the agreement lacked economic reality or that it would have been unreasonable for the purchaser to have required the covenant. Thus, purchaser is entitled to amortize the cost of the covenant and the seller has ordinary income on its sale. Donald G. Daiker and Alan K. Farber for the petitioners. Rebecca T. Hill, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: In these consolidated proceedings respondent determined deficiencies in petitioners' income taxes for the calendar year 1972, as follows: Docket No.
Petitioner
Deficiency
4688-75
Marcel L. Malgoire and Marguerite
$4,144
C. Malgoire
5477-75
George J. Cocores and Marcia
474
Cocores
The only issue presented for our consideration is whether $20,000 of the $90,000 sales price of a business sold by Marcel L. Malogoire (hereafter Malgoire) to George J. Cocores *486 (hereafter Cocores) in 1972 was paid for a covenant not to compete, as recited in the written sales agreement, or was paid for goodwill. Malgoire reported the amounts he received as capital gain while Cocores claimed the $20,000 (amortized over five years) as deductions against ordinary income as payments for a covenant not to compete. Respondent, taking an inconsistent position in order to protect the revenue, determined that the $20,000 was taxable as ordinary income to the seller Malgoire, and also that it was not deductible by the buyer, Cocores. Respondent takes the position here that the covenant not to compete is valid. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioners Marcel L. Malgoire and Marguerite C. Malgoire, husband and wife, were legal residents of Woodside, Calif., at the time their petition herein was filed. They filed a joint income tax return for the taxable year 1972 with the District Director of Internal Revenue, San Francisco, Calif.
Petitioners George J. Cocores and Marcia Corcores, husband and wife, were legal residents *487 of Redwood City, Calif., at the time their petition herein was filed. They filed a joint income tax return for the taxable year 1972 with the District Director of Internal Revenue, San Francisco, Calif.
Prior to 1963, Malgoire worked for the Government, until a heart attack forced him from his position. At that time, he decided to open a small business. Some friends told him of a liquor store, the Brown Jug, for sale in Woodside, Calif., which he then bought for approximately $39,237 plus $6,800 for the store's inventory. At the time of purchase, the Brown Jug had gross sales of about $80,000 to $90,000. The business was run as a mom and pop store. Woodside was a small, residential community which discouraged further commercial development. Malgoire built substantial goodwill in the store due to the type of service he rendered as well as to the length of time he had been in the business. Indeed, developing good personal relationships with the customers and providing them with excellent service was a major factor in the business increasing its annual gross sales to approximately $230,000 at the time of sale. In 1971, Malgoire, then 57 years old, decided to sell the store *488 due to family pressures (his children were no longer willing to help in the store and his wife wanted to retire) and health reasons. Cocores was told that Malgoire and his wife wanted to retire but was unaware of Malgoire's health problems. On August 8, 1972, Malgoire and Cocores entered into a sales agreement for the sale for $90,000 of the Brown Jug. The agreement allocated the price as follows: (a) stock-in-trade (estimate) - $20,000; (b) fixtures and equipment - $8,000; (c) trade name and goodwill - $10,000; (d) alcoholic beverage license - $32,000; (e) covenant not to compete - $20,000. Negotiations were begun in July 1972 between Malgoire and Cocores for the sale of the Brown Jug and were conducted over a series of three or four meetings and several letters and phone calls were exchanged between the two. After agreeing on a purchase price of $90,000 (but before any allocation of the price to any assets other than inventory), Malgoire and Cocores decided to hire an attorney to handle the transaction for them and to split his fee equally. They agreed to hire Harold Francis, an attorney recommended to Cocores by friengo, rather than Malogire's attorney because of the low fee *489 charged by Francis. Malgoire's attorney told Malgoire that it was all right for Francis to represent him and Cocores. At the first meeting Cocores and Malgoire had with Francis, a fee was agreed upon and Francis stated he would begin obtaining the necessary documents from the Alcohol Beverage Board. The testimony is conflicting as to whether some of the $70,000 purchase price ($90,000 less $20,000 inventory) was allocated among the license, fixtures, and goodwill prior to this first meeting, but at or prior to the second meeting, both parties agreed that $8,000 was to be allocated to the fixtures and $32,000 to the license, leaving $30,000 to be allocated to goodwill. Not until the second meeting with Francis was a covenant not to compete brought up by Cocores. Beginning with an allocation of $5,000 for a time span of two years, and a request by Cocores that it last for eight years, the parties finally agreed to allocate $20,000 to the covenant, which was to run for five years. The remaining $10,000 was then allocated to goodwill. Cocores requested the covenant because he felt he needed protection from competition by Malgoire, not wanting to rely solely on Malgoire's statements *490 that he wanted to retire. Cocores was well aware of the tax consequences of the covenant prior to raising it as an issue. Although the tax consequences were explained to Malgoire, and Francis suggested Malgoire might wish to see a tax attorney or C.P.A., Malgoire never understood that he would pay tax at ordinary income rates as opposed to capital gain rates. Both parties, of course, knew the legal (non-tax) consequences of the covenant. OPINION The issue for our decision is whether the $20,000 allocated to a covenant not to compete in the contract of sale between Malgoire and Cocores should be upheld, as claimed by the purchaser and respondent, or should be allocated instead to goodwill, as claimed by the seller. It has long been held that when the parties to a transaction such as the one here have specifically entered into an agreement not to compete and have therein stated the consideration therefor, strong proof must be adduced by them to overcome that declaration. , affg. ; ; . *491 It is without dispute that Malgoire agreed to Cocores' request for the covenant not to compete. However, Malgoire claims that the covenant had no independent significance or economic reality. Although Cocores and Amlgoire agreed to an overall purchase price of $90,000 (including inventory) prior to any mention of a covenant not to compete, such an allocation may nonetheless be effective. ; ; . The question is properly whether the parties intended to allocate a portion of the purchase price to such covenant at the time they executed the formal sales agreement. , quoting , and . We do not believe that the agreement not to compete lacked economic reality. Although Malgoire, at age 57, told Cocores he intended to retire (and in fact did so), in view of the importance of personal service to the *492 business and Malgoire's outstanding reputation in the community, and the fact that Malgoire's personal efforts contributed significantly to the growth of his business, we cannot conclude that it would have been unreasonable for Cocores to have required an agreement not to compete. Cf. , affg. ; ; Malgoire, with the advice of counsel, agreed to the inclusion of the covenant not to compete in the sales agreement. Although Malgoire never understood the tax consequences of the allocation, this is not determinative because there was no misunderstanding as to the legal effect and substance of the covenant. . Additionally, at the time the covenant was first proposed, the parties did in fact negotiate its terms. Malgoire argues in the alternative that if we determine that the covenant has economic reality, that the amount allocated not exceed $5,000. While we maintain some doubt as to whether the covenant was worth *493 $20,000 and good-will only $10,000, we do not believe we can overturn the allocation for the same reasons we sustained the validity of the covenant. Moreover, no evidence was introduced from which we could make an allocation other than that to which the parties agreed. Respondent's argument that we should apply the test set out in , cert. denied , revg. (that a "party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc.") is moot in view of our holding for respondent on the grounds described above, and we need not reach it. Decision will be entered for the respondent in Docket No. 4688-75. Decision will be entered for the petitioners in Docket No. 5477-75.